UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:24-CR-00169-JAR-JSD-1 |
| ) | |
| VENKATESH SATTARU, et al., ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT SATTARU'S MOTIONS TO SUPPRESS EVIDENCE--CELL PHONES**

Defendant Sattaru has moved to suppress evidence seized pursuant to search warrants issued by a Missouri court for two cell phones described as follows:

1. Silver iPhone with clear case belonging to Sattaru Venkatesh Reddy [sic](identified in discovery materials as iPhone #2, seized during traffic stop)(search warrant dated 11/29/23).

2. Silver iPhone with clear case (identified in discovery materials as iPhone #1 seized at Mr. Sattaru's home)(search warrant dated 12/1/23).

Because the warrants present common issues, defendant submits this memorandum in support of the motions.

## Facts[1]

The searches and seizures at issue sprang from a welfare check by St. Charles County Police at 3901 Highway D in Defiance, Missouri, early on November 29, 2023. *See* G004, G01477. At that place and time, officers encountered the alleged victim of human trafficking, P.M., who reported a course of abuse and forced labor inflicted by the defendants, including defendant Venkatesh Sattaru. *See id.* P.M. ran out of the house after officers knocked on the front door. *Id.* P.M. reported that he lived at the 3901 residence along with two other men (later identified as co-defendants Nikhil Penmatsa and Sravan Penumetcha), who were involved in various assaults on P.M. The officers saw marks of injury on P.M., who gave the officers permission to enter the residence, where they found the co-defendants. *See* G001478. P.M. further reported that Mr. Sattaru, his brother-in-law, employed him in several businesses and directed the other defendants in the course of physical abuse prompted, among other things, by errors or omissions of P.M. in performing services. *See* G01478. P.M. reported that he was beaten at various times with a wooden stick, PVC pipe, 12/2-gauge yellow electrical wire, a washing machine hose, and a metal rod. *See id.* He indicated that the assaults were recorded "via Facetime on an electronic device."

After interviewing P.M., the officers arrested Penmatsa and Penumetcha and took P.M. to the hospital. *See* G005. In the meantime, St. Charles officers surveilled Mr. Sattaru as he drove along St. Charles roads, eventually stopping him with the intention of detaining him for

---

[1] The facts stated herein are derived from the search warrant applications (which form the basis for the issuance of the warrants), supplemented for clarification by the police reports and body camera video footage, which detail the seizure of the cell phones in question. References will be to the Government's numbering of discovery materials, e.g., G001, and to "BWC" videos. Pertinent videos will be filed with this memorandum. The Court can judicially notice the state court warrants and supporting applications. Of course, defendant reserves the right to present all relevant evidence at any hearing on this motion.

questioning.  *See* BWC 562, 23-6373, 1:40ff.  Shortly after the stop, one of the detectives involved in the P.M. matter came to the scene.  *See* G0020475 (video).  The detective and the officers involved in stopping Mr. Sattaru conferred, and the uniformed officers advised that there were a cell phone and a laptop computer in Mr. Sattaru's car.  *See* BWC 562, 6:00ff.  The detective emphasized that the other officers should make sure that the cell phone went to the police station with Mr. Sattaru.  *See* BWC 8:40ff.; G0020475, 3:26, 4:30.  An officer accordingly seized the cell phone, and Mr. Sattaru unlocked the cell phone in order to allow the officers to secure his car, which was left on the street.  *See* BWC 562, 9:22ff., 10:50ff.  The phone was transported with Mr. Sattaru to the police station, and, as noted above, is identified as a "silver iPhone with a clear case belonging to Venkatesh Sattaru . . . ."  *Id.,* 10:50; G01458.

      Later on November 29, 2023, a detective applied for a search warrant for the silver iPhone seized during Mr. Sattaru's arrest.  *See* G01458.  The application for the search warrant for that silver iPhone recited the basic information provided by P.M. that formed the basis for the numerous search warrants in this case, including warrants for the search of properties owned or occupied by Mr. Sattaru or his business enterprises.  Compare G01472ff., G01477ff. with GG01458-59, ¶¶1-5.  Although the application for the iPhone seized from Mr. Sattaru's car contains no specific allegations of the use of that silver iPhone in connection with any alleged offense by Mr. Sattaru, the application avers that based on the applying detective's "training and experience and that of other trained and experienced law enforcement investigators," the detective "knows that the suspects probably use their cell phones and associated applications to organize, communicate, and facilitate the criminal offenses for which they are being investigated." G01459-60, ¶6. Additional averments in identical language refer to "training and experience" as the basis for believing that "people" utilize "cloud" services for innocent as well

3

as illegal activities. G01460, ¶7. Finally, and again based wholly on "training and experience," the detective avers that "persons involved assaults and human trafficking often communicate with others" through written and digital correspondence, "which could tend to identify the dates and times of assaults" and other evidence of involvement or knowledge of others relating to "the offenses." *Id.*, ¶8.  Based entirely on the detective's application, a state judge issued a warrant to search the second silver iPhone with clear case "belonging to" Mr. Sattaru, for "[a]ny and all information contained within the devices [sic] or their accessible cloud storage, including, location data, wi-fi activity, application data, call logs, contact lists, address books, images, videos, text messages, and in-app communications, and but not [sic] limited to video surveillance data including videos, pictures, and time stamps for the time period of April 1, 2023, through November 29, 2023" as contained in the silver iPhone with clear case "belonging to Sattaru Venkatesh Reddy."  G01462.

On November 29, 2023, St. Charles Detective Presson applied for a search warrant for 324 Chestnut Creek Circle, Dardenne Prairie, reportedly the residence of Mr. Sattaru. *See* G01472; *see also* G0013.  After recounting the history of abuse as described above, the application avers that P.M. reported being assaulted at the Chestnut Creek residence, and that "12/2 gauge [sic] yellow electrical wire" was used in the assaults. G01473. The application further recites that P.M. also reported that there was a video surveillance camera in the basement of the residence, which possibly recorded the assaults. *Id*. The application makes no mention of cell phones. A warrant was duly issued, authorizing search and seizure of "electronics" without other differentiation. *See* G01472.

The Chestnut Creek warrant was executed on November 29. Mrs. Sattaru (also a defendant in this cause) admitted the officers and denied any knowledge of physical assaults.

4

G0053. She also reported that the home's surveillance cameras did not record. *See* G0054. The officers seized electronics belonging to Mr. Sattaru, electrical wire, and Skecher sandals. *Id.* During this search, the officers also seized a "silver iPhone with clear case," which has been denominated as silver iPhone #1. *See* G0053, G01452, ¶6.

Subsequent to the seizure of the second silver iPhone with the clear case, a detective applied for a warrant to search the phone. *See* G01451. The warrant application set forth the same allegations by P.M. concerning his mistreatment as were described in the other iPhone warrant application. *See* G01451-52, ¶¶1-5. The application then attested that the second silver iPhone was seized during the search of Mr. Sattaru's residence, and that his wife reported that the phone belonged to Mr. Sattaru. *See id,* ¶6. Like the application regarding the silver iPhone seized from Mr. Sattaru, the application for a warrant regarding the second iPhone contains no specific allegations of the use of the iPhone in connection with any alleged offense by Mr. Sattaru. Instead, the application parrots the averments that, based on the applying detective's "training and experience and that of other trained and experienced law enforcement investigators," the detective "knows that the suspects probably use their cell phones and associated applications to organize, communicate, and facilitate the criminal offenses for which they are being investigated." *Id.,* ¶7. Additional averments in identical language refer to "training and experience" as the basis for believing that "people" utilize "cloud" services for innocent as well as illegal activities. *Id.,* ¶8. Finally, and again based wholly on "training and experience," the detective avers that "persons involved assaults and human trafficking often communicate with others" through written and digital correspondence, "which could tend to identify the dates and times of assaults" and other evidence of involvement or knowledge of others relating to "the offenses." *Id.,* ¶9. Based entirely on the detective's application, a state

5

judge issued a warrant to search the silver iPhone with clear case for "[a]ny and all information contained within the devices [sic] or their accessible cloud storage, including, location data, wi-fi activity, application data, call logs, contact lists, address books, images, videos, text messages, and in-app communications, and but not [sic] limited to video surveillance data including videos, pictures, and time stamps for the time period of December 16, 2022, through November 29, 2023" as contained in the "silver iPhone with clear case."  G01455.

## Argument

**1.      The silver iPhones seized from Mr. Sattaru and his home were seized without probable cause, and evidence secured by searching those phones is tainted, notwithstanding the subsequent issuance of search warrants for the phones.**

Indisputably, the silver iPhone seized from Mr. Sattaru's car was seized without a warrant.  Of course, it was not contraband or an instrumentality of crime, nor was it obviously evidence of any crime.  Nor did Mr. Sattaru consent to its seizure as evidence; rather, he understood and expected that it would remain with him at the police station.  *See* BWC 562.  However, it is also indisputable that the police intended to seize the cell phone from the outset, as evidenced by the detective's instructions to the arresting officers to "make sure" the phone went with Mr. Sattaru to the police station.  *See* GOV 0020475, 3:26, 4:30.  Obviously, it was seized by police on the mere possibility that it could prove to contain incriminating evidence.

Likewise, the iPhone seized from Mr. Sattaru's home, 324 Chestnut, was seized without probable cause and pursuant to a defective warrant as discussed below.

In *Murray v. United States,* 487 U.S. 533, at 536-37 (1988), the Supreme Court described the application of the exclusionary rule to evidence obtained by an illegal search or seizure (citations in original):

6

The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, *Weeks v. United States*, 232 U.S. 383 (1914), and of testimony concerning knowledge acquired during an unlawful search, *Silverman v. United States*, 365 U.S. 505 (1961). Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes "so attenuated as to dissipate the taint," *Nardone v. United States*, 308 U.S. 338, 341 (1939). See *Wong Sun v. United States*, 371 U.S. 471, 484-485 (1963).

In the case at bar, there was no basis whatever for seizure of Mr. Sattaru's cell phone at the time of his arrest.[2] At the time, the officers had no information that would have supported an objectively reasonable belief that the cell phone was an instrumentality or evidence of a crime, or that it contained evidence of any crime. *See, e.g.*, *United States v. Hogan,* 25 F.3d 690 (8th Cir. 1994)(illegal seizure of automobile without factual basis supporting probable cause). Similarly, there was no basis for the seizure of the cell phone from 324 Chestnut, other than the search warrant's vague reference to "electronics." Again, as discussed below, nothing in the search warrant application showed probable cause for seizure of the cell phone in the first place.

The warrantless seizure of property is *per se* unreasonable unless it falls within one of the recognized exceptions to the warrant requirement of the Fourth Amendment. *See, e.g.*, *United States v. Shrum*, 59 F.4th 968, 972 (8th Cir. 2023). Here, it requires no citation to authority to conclude that the warrantless seizure of Mr. Sattaru's cell phone at the time of his arrest was illegal, and the seizure of the cell phone from 324 Chestnut fares no better.

**2.     Apart from the illegal seizure of the cell phones, both search warrant applications are wholly insufficient on their face to establish probable cause that the cell**

---

[2] There can be no doubt that Mr. Sattaru was arrested when the police stopped him, handcuffed him, and took him to the police station.

7

**phones contained any evidence of crime, being based entirely on averments of "training and experience" with no particularized facts relating to the iPhones.**

The text of the Fourth Amendment is plain:  "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."   The standards for evaluating probable cause in support of a search warrant have been summarized by the Eighth Circuit in *United States v. Saddler,* 19 F.4th 1035, 1038-39 (8th Cir. 2021).  To paraphrase the Eighth Circuit, in obtaining a warrant, an officer must make a showing to the issuing magistrate of facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.  A warrant may be issued to search for "evidence," but there must be a nexus between the item to be seized and criminal behavior.  In the case of "mere evidence," probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.  When the issuing magistrate relies solely on a supporting affidavit in determining probable cause, as in this case, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."  *United States v. Roberts,* 975 F.3d 709, 713 (8th Cir. 2020).  In reviewing whether there was probable cause to issue the warrant, the courts give the issuing magistrate's determination "great deference," examining the sufficiency of the supporting affidavit "using a 'common sense' and not a 'hypertechnical' approach."  *United States v. Grant*, 490 F.3d 627, 631-32 (8th Cir. 2007); *see also United States v. Green*, 954 F.3d 1119, 1123 (8th Cir. 2020).

It is at once painfully obvious that the search warrant applications regarding the iPhones are deficient.  No facts showing any nexus between the phones, or their contents, and criminal behavior is shown.  Instead, the state court relied solely on the officer's representations regarding

8

"training and experience."  While an officer's training and experience can be considered in connection with a search warrant application, the bald allegations of "training and experience" do not suffice here.  If such allegations were all that was needed for a warrant, then police could obtain warrants on demand, based solely on training and experience.  That is not the law.  The applications in support of the search warrants for the iPhones are insufficient and any evidence obtained by their use must be suppressed.

**2.      The warrants themselves are facially imprecise, containing no particulars identifying the data to be seized with reference to any crime, allowing officers to rummage through all data on the iPhones without any limitation.**

Under the particularity requirement, it is elementary that a search warrant that does not state "with particularity" the persons or things to be seized is fatally defective, and will not support a good faith reliance argument.  See *Groh v. Ramirez,* 540 U.S. 551 (2004); *see also Maryland v. Garrison,* 480 U.S. 79 (1987); *United States v. Saddler,* supra.  In the case of searches of iPhones and similar repositories of electronic or digital data, the particularity requirement is satisfied if the warrant describes generic classes of items, relating them to the offenses under investigation, *e.g.*, beatings of P.M., or communications regarding P.M. specifically.  Cf. *Saddler,* 19 F.4th at 1041.  In other words, it is elementary that a more particular description of items to be seized is required when other objects of the same general classification are likely to be found at the place to be searched.  *See United States v. Wecht*, 619 F.Supp.2d 213, 229 (W.D. Pa. 2009), citing 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(a) (4th ed. 2008); *see also United States v. Shrum*, 59 F.4th 968, 973-74 (8th Cir. 2023)(describing the "practical accuracy" requirement in evaluating particularity of warrant); *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017)(stating rule that some

9

nexus between evidence to be seized and place to be searched is required in a warrant).  Here, the warrants basically authorized a general search of the iPhones' contents, with no limitation whatever, other than a date range.  In effect, therefore, the warrants were general warrants, unsustainable under the Fourth Amendment.

**3.    The "good faith exception" will not save the iPhone warrants, as the warrants and their supporting applications are so facially insufficient that no reasonable officer could rely on them.**

Defendant recognizes that *Herring v. United States*, 555 U.S. 135 (2009), establishes that suppression is not an automatic consequence of a Fourth Amendment violation, but that the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct. Here, however, the error was not the result of isolated negligence.  Not one but two warrant applications spelled out nothing about what the officers were supposed to be looking for when they searched the iPhones.  Nothing indicates that the search is limited to evidence of assaults on P.M. or the connection between Mr. Sattaru and the assaults.  The resulting vagueness of the search warrants was deliberate, and the good faith exception to the exclusionary rule cannot be applied to such an egregious failure to observe the most elementary requirement of the Fourth Amendment.

Defendant also notes that the warrants cannot be edited in order to preserve the seizure of some evidence.  To do so would be to approve the issuance of general warrants empowering police to search cell phone data at random.  Such warrants are no warrants at all, but writs of assistance.

## Conclusion

Given the fatally vague nature of the iPhone warrants and the supporting applications, any evidence obtained from the searches under the warrants described must be suppressed.

Respectfully submitted,

By:   /s/ ADAM FEIN

Adam Fein
Attorney for Defendant
120 S. Central Avenue, #130
Clayton, MO 63105
(314) 862-4332
afein@rsfjlaw.com

## CERTIFICATE OF SERVICE

I certify that on August 21, 2025, this document was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Ms. Dianna Edwards, assistant United States attorney.