UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-CR-00169-JAR-JSD |
| | ) | |
| VENKATESH SATTARU, et al., | ) | |
| Defendants. | ) | |

**DEFENDANT SATTARU'S MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE--3901 HIGHWAY D, 324 CHESTNUT CREEK CIRCLE, AND 6 DANIEL DRIVE**

Defendant Sattaru has moved to suppress evidence seized pursuant to search warrants issued by a Missouri court for three locations:  3901 Highway D, Defiance, Missouri (two warrants); 324 Chestnut Street Circle, Dardenne Prairie, Missouri; and 6 Daniel Drive, O'Fallon, Missouri.  Because the warrants present common issues, defendant submits this memorandum in support of the three motions.  A separate motion to suppress and accompanying memorandum address the search and seizure at defendant's restaurant premises at 7409 Highway D, Dardenne Prairie, Missouri.

**Facts**[1]

The searches and seizures at issue sprang from a welfare check by St. Charles County Police at 3901 Highway D in Defiance, Missouri, on November 29, 2023.  *See* G004, G01477.  At that place and time, officers encountered the alleged victim of human trafficking, P.M., who

---

[1] The facts stated herein are derived from the search warrant applications (which form the basis for the issuance of the warrants) and from the police reports, which detail the execution of the warrants and the evidence obtained from the searches.  All of the references will be to the Government's numbering of discovery materials, *e.g*., G001.  The Court can judicially notice the state court warrants and supporting applications.  Of course, defendant reserves the right to present all relevant evidence at any hearing on this motion.

reported a course of abuse and forced labor inflicted by the defendants, including defendant Sattaru. *Id.* P.M. ran out of the house after officers knocked on the front door. *Id.* P.M. reported that he lived at the 3901 residence along with two other men (later identified as co-defendants Nikhil Penmatsa and Sravan Penumetcha), who were involved in various assaults on P.M. The officers saw marks of injury on P.M., who gave the officers permission to enter the residence, where they found the co-defendants. *See id*. at G001478. P.M. further reported that defendant Sattaru, his brother-in-law, employed him in several businesses and directed the other defendants in the course of physical abuse prompted by errors or omissions of P.M. in performing services. *See id*. at G01478. P.M. reported that he was beaten at various times with a wooden stick, PVC pipe, 12/2-gauge yellow electrical wire, a washing machine hose, and a metal rod. *See id.* He indicated that the assaults were recorded "via Facetime on an electronic device."

After interviewing P.M., the officers arrested Penmatsa and Penumetcha and took P.M. to the hospital. One of the officers, Detective Presson, then applied for a search warrant for 3901 Highway D. *See id*. G001477-78. A state judge granted a search warrant on November 29, authorizing officers to search for and seize "[e]videntiary photographs, bodily fluids, electronics, 12/2 gage [sic] yellow electrical wire, PVC pipe, wooden stick, iron rod, video surveillance cameras, and washing machine hose." *Id*. at G01479. Officers duly searched the 3901 address and seized a number of items, including washing machine hoses, a 1x3 board, notebooks, phones, laptops, and a metal rod.

On December 8, 2023, St. Charles and Homeland Security officers conducted a second search of the 3901 Highway D residence pursuant to another search warrant. *See id*. at G0066ff. In applying for the second search warrant, Detective Sykes repeated verbatim the averments of

the first warrant application but added that Detective Leone had since interviewed P.M. and learned that bloody clothing, a wooden stick, a metal walking stick and a Nokia mobile phone could be found at 3901 Highway D, and that the sticks were used to beat him, and the phone was provided to him as a means of providing updates of his activities to defendant Sattaru.  *See id*. at G01487.  The December warrant application indicated, "At the time of execution, the victim will be present." *Id*. at G01487, ¶7.  The warrant granted by the state court authorized a search for "[e]videntiary photographs and videos, bodily fluids, electronics, victims [sic] clothing that may contain blood-like stains, a wooden stick, a metal walking stick, and any other objects identified by the victim that were used during the assaults." *Id*. at G01488.

The second search of the 3901 residence was guided for the most part by P.M., who provided an extensive narration of his ordeal, not just at 3901, but over time.  *See id*. at G0066ff. He described the places where he was beaten and how he cleaned up the blood immediately.  *See id*. at G0067.  He reported being beaten with a stick and a short PVC pipe, broken from earlier beatings, and being threatened by defendant Sattaru with a nail gun. *See id*. at G0067-68.  In defendant Penumetcha's bedroom, P.M. identified a dented metal folding chair used as a restraint during beatings.  *See id*. at G0069.  He led officers to a closet, which he opened, locating bloodstained clothes and a black metal cane, plus his work journals. *See id.*  In the closet, the officers saw nail gun cartridges.  *See id.*  Going to the basement, P.M. located bloody clothes in the clothes dryer and another metal folding chair used in beatings at the washing machine, using a washing machine hose.  *See id*. at G0069-70.

On November 29, 2023, St. Charles Detective Presson applied for a search warrant for 324 Chestnut Creek Circle, Dardenne Prairie, reportedly the residence of defendant Sattaru.  *See id*. at G01472; *see also* G0013.  After recounting the history of abuse as described above, the

application avers that P.M. reported being assaulted at the Chestnut Creek residence, and that "12/2 gauge [sic] yellow electrical wire" was used in the assaults. *Id*. at G01473. P.M. also reported that there was a video surveillance camera in the basement of the residence, which possibly recorded the assaults. *See id*.

The Chestnut Creek warrant was executed on November 29. Defendant's wife admitted the officers and denied any knowledge of physical assaults. *See id*. at G0053. She also reported that the home's surveillance cameras did not record. *See id.* at G0054. The officers seized electronics belonging to defendant Sattaru, electrical wire, and Skecher sandals. *See id.*

Finally, also on December 8, 2023, Detective Sykes applied for a search warrant for 6 Daniel Drive, O'Fallon, Missouri. *See id*. at G01482. After reciting the identical information concerning P.M.'s initial contacts and reports to police of the alleged history of assaults and forced labor as set forth in all of the search warrant applications, the application for Daniel Drive added that P.M. had later informed the police that he had been relocated from defendant Sattaru's Chestnut Creek home to another home owned by defendant and his wife at 6 Daniel Drive, where he was regularly beaten bloody. *See id*. at G01483, ¶6. The application averred, "At the time of execution, the victim will be present." *Id.,* ¶7. A Missouri judge duly granted the warrant, authorizing search for and seizure of "[e]videntiary photographs, videos, bodily fluids, and any objects identified by the victim that were used during the assaults." G01484.

As were the other warrants issued on December 8, the Daniel Drive warrant was executed on that date. *See id*. at G0061.

The items seized from the searches of 3901 Highway D include swabs, a blue I-phone, "Blink" module and camera, red spiral notepads, PVC pipe, a metal rod, a rolling pin, hoses, a laptop, an Apple watch, a black I-phone, various other cell phones, a wooden stick, a washing

machine hose, a board, notebook, photographs.  *See id*. at G007-12.  It is not clear which items were seized during each search, although no mention is made of bloody clothing or a walking stick in the first application for a warrant, and a report of the first search indicates seizure of washing machine hoses, a board, a metal rod, notebooks, phones, and laptops.  *See id*. at G0086.

## Argument

1.     **The first (November) and second (December) search warrants for the 3901 premises were insufficiently particular on their face in authorizing an unlimited search for and seizure of "electronics," without probable cause.**

The text of the Fourth Amendment is plain:  "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Under this rubric, it is elementary that a search warrant that does not state "with particularity" the persons or things to be seized is fatally defective, and will not support a good faith reliance argument.  *See Groh v. Ramirez,* 540 U.S. 551 (2004).

Here, the application for the first search warrant for 3901 Highway D stated that the victim "said the assaults were recorded via Facetime on an electronic device."  The application for the second warrant mentioned only a Nokia mobile phone.  *See* G01478, ¶4; G01487, ¶6. However, both search warrants authorized a search for and seizure of "electronics" without qualifications.  *See id*. at G01479; G01488.  Such a generalized description, with no effort to limit it to devices capable of recording or transmitting via "Facetime" was insufficiently particular on its face.  It is elementary that a more particular description of items to be seized is required when other objects of the same general classification are likely to be found at the place to be searched.  *See United States v. Wecht*, 619 F.Supp.2d 213, 229 (W.D. Pa. 2009), citing 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(a) (4th ed. 2008).

That is certainly true of "electronics," which could embrace cell phones, televisions, radios, computers, video cameras, and a host of other items in common use in the average home.  *See Tillis v. Blanks*, 2017 WL ____, No. 2:15-333-CG-C (S.D. Ala. Jan 10, 2017)(warrant to search for "any or all televisions, computers, laptops, tablets and all or any electronics devices" fatally defective).[2]

Defendant recognizes that *Herring v. United States*, 555 U.S. 135 (2009), establishes that suppression is not an automatic consequence of a Fourth Amendment violation, but that the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct. Here, however, the error was not the result of isolated negligence.  Not one but two warrant applications--indeed, three applications as discussed below--spelled out nothing about what electronics, other than the Nokia cell phone, would contain evidence of assaults on P.M. or the connection between the defendant Sattaru and the assaults.  The resulting vagueness of the search warrants was deliberate, and the good faith exception to the exclusionary rule cannot be applied to such a significant failure to observe the most rudimentary requirement of the Fourth Amendment.

**2.      The Chestnut Creek search warrant was insufficiently particular on its face in authorizing an unlimited search for and seizure of "electronics," without probable cause.**

Although the foregoing discussion applies with equal force to the search warrant for 324 Chestnut Creek, the invalidity of the warrant's authorization to search for and seize "electronics" is even more serious, for the application seeking the warrant states nothing about any electronics

---

[2] Given that the state judges granting the warrants relied entirely on the applications for the warrants in this case, only the facts alleged in the applications should be considered in assessing the validity of the warrants.  E.g., *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020).

other than a surveillance camera.  *See* G01473, ¶5.  Such a glaring omission cannot support the warrant or a good faith argument--otherwise, general warrants will become the norm, and the Fourth Amendment will be a dead letter.

**3.    The second search warrant for the 3901 premises and the Daniel Drive search warrant were unconstitutional general warrants on their face, authorizing an unprecedented search for and seizure of "any objects identified by the victim that were used in the assaults."**

Although distinguishable in part because of a First Amendment aspect, the issuance of warrants for 3901 Highway D and 6 Daniel Drive that authorized the victim to accompany the officers and to, in effect, authorize seizure of "any objects" that were used in assaults closely resemble the warrant that was held invalid in *Lo-Ji Sales, Inc v. New York*, 442 U.S. 319 (1979). In that case, the issuing magistrate himself accompanied police officers in searching a bookstore for obscene material and on the spot authorized seizure of items not specified in the warrant. Such a "fill-in-the-blank" warrant, particularizing the warrant *after* the search and seizure was condemned by the Supreme Court.

In Missouri, civilians are not permitted to participate in the execution of search warrants, Mo.Rev.Stat. §542.276; however, such participation is not necessarily in contravention of the Fourth Amendment.  *See generally* Annot., 68 A.L.R.5th 549 (1999 & Supp.).  Here, however, the designation of the victim as the *de facto* searching and seizing officer, with unlimited authority to designate what shall be seized, seems unprecedented.  Typically, the participation of a victim in a search is limited to identifying stolen property or evidence that requires some level of expertise to distinguish, such as computer files or books of account.  *See, e.g.*, *Boyd v. United States,* 116 U.S. 616 (1886); *see generally* 2 LaFave, et al., *Criminal Procedure* §3.4(j) (4th ed.).

The defect in the warrant's authorization of the victim to search and seize in his discretion is illustrated by a case in which the victim's participation did not invalidate the warrant.  In *United States v. Robertson,* 21 F.3d 1030 (10th Cir. 1994), a carjacking victim reported the theft of several items of property by the carjackers.  The officers obtained a warrant to search for the specific items and the instrumentalities and fruits of the carjacking.  Unable to find the specific items when executing the warrant, the officers summoned the victim to the scene, who identified some other items that had been stolen from him.  The use of the victim in this connection did not invalidate the search, because the items identified with the victim came within the permissible generic description of "fruits and instrumentalities" of the offense of carjacking.  Nevertheless, items whose "incriminating character" in relation to the carjacking was not apparent were suppressed.

Here, by contrast, the second warrant for 3901 Highway D and the warrant for 6 Daniel Drive do not even attempt any kind of general description but broadly authorize the victim to procure the seizure of items that the victim identifies as used during the alleged assaults.  This is precisely analogous to the open-ended warrant in *Lo-Ji Sales*, supra.  Such a blatantly defective warrant cannot support a lawful search.

Nor can the warrants at issue be saved by the good faith exception.  That exception is inapplicable where the culpability of the police and the need for deterrence of similar conduct compel application of the exclusionary rule.  Compare *Hering v. United States,* supra, with *Groh v. Ramirez,* supra.  The use of these general warrants cannot be characterized as an isolated act of negligence, for not one but two warrants were sought on the same premise.  This was deliberate conduct on the part of the police.

Defendant also submits that the warrants cannot be edited in order to preserve the seizure of some evidence, such as the metal walking stick at 3901 Highway D, *see* G01486, G01487, ¶6. To do so is to approve the issuance of general warrants empowering victims to search and seize in tandem with officers.  Such warrants are no warrants at all, but writs of assistance.[3]

### Conclusion

Given the fatally vague reference to "electronics" in the search warrants for 3901 Highway D and 324 Chestnut Creek, all electronic devices seized from those addresses must be suppressed.  Given the open-ended search warrants for 3901 Highway D (12/8/23 warrant) and 6 Daniel Drive authorizing the victim to execute the warrants in effect, all evidence seized from those two locations on December 8, 2023, must be suppressed.

Respectfully submitted,

By:    */s/ ADAM FEIN*

Adam Fein
Attorney for Defendant
120 S. Central Avenue, #130
Clayton, MO 63105
(314) 862-4332
afein@rsfjlaw.com

### CERTIFICATE OF SERVICE

I certify that on August 21, 2025, this document was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Mr. Dianna Edwards, assistant United States attorney.

---

[3] Needless to say, the Court, at a minimum, must suppress all evidence seized that was not specifically identified in the warrant itself, even if the Court chooses to excise the reference to the victim and evaluate the search independent of that facet.